DECISION
{¶ 1} Relator, Joyce M. Illing, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio ("commission") to vacate its order that denies her application for permanent total disability ("PTD") compensation and orders the commission to find that she is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including *Page 2 
findings of fact and conclusions of law (attached as Appendix A). The magistrate in her decision found some evidence in the medical reports in the record supporting the action taken by the commission and concluded that the commission did not abuse its discretion in any of the particulars claimed by the relator. The magistrate recommended that relator's request for a writ of mandamus be denied.
 {¶ 3} Relator filed objections to the magistrate's decision, contending the magistrate's decision is not supported by law or evidence and reargues to this court the issues presented to and decided by the magistrate. For the reasons adequately stated in the decision of the magistrate, the objections are overruled.
 {¶ 4} Following an independent review, pursuant to Civ. R 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objections overruled; writ of mandamus denied.
KLATT and TYACK, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered September 26, 2007 IN MANDAMUS {¶ 5} Relator, Joyce M. Illing, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation. *Page 4 
Findings of Fact: {¶ 6} 1. Relator has sustained two work-related injuries and her claims have been allowed as follows:
 [02-445686]: SPRAIN LUMBOSACRAL; LUMBAR DEGENERATIVE JOINT DISEASE AT L3-4 AND L4-5; DEPRESSIVE DISORDER.
 00-488249 — CONTUSION OF KNEE, BILATERAL; CONTUSION OF FOREARM, RIGHT; FRACTURE PATELLA-CLOSED, LEFT.
 {¶ 7} 2. Relator filed her application for PTD compensation in March 2006. On her application, she indicated that she was 67 years old, graduated from high school in 1958, did not have any specialized training, could read, write, and perform basic math, and indicated that she had not participated in any rehabilitation services.
 {¶ 8} 3. In support of her application, relator submitted the March 2006 report of Dan Buchanan, D.C. After providing his physical findings upon examination, Dr. Buchanan opined that relator was unable to perform sustained remunerative employment as a result of the allowed physical conditions in her claims.
 {¶ 9} 4. The record also contains the February 2006 report of Michael T. Farrell, Ph.D. In his report, Dr. Farrell indicated that relator's allowed psychological condition had reached maximum medical improvement ("MMI"), and that her psychological condition impaired her basic daily functioning as follows: (1) stress tolerance — moderate; (2) cognitive functioning — mild; (3) social functioning — moderate; and (4) endurance/pace-mild. He further opined that her psychological symptoms would impair her ability to deal with normal stressors at work, interact appropriately with others, complete a normal *Page 5 
workday and work week without interruptions, understand and remember detailed instructions, carry-out detailed instructions, and maintain socially appropriate behavior. Ultimately, Dr. Farrell opined that relator was unable to perform any type of sustained remunerative employment based upon her allowed psychological and physical conditions, as well as certain nonmedical disability factors.
 {¶ 10} 5. Relator was referred to Andrew Freeman, M.D., for an examination concerning her allowed physical conditions. In his June 2006 report, Dr. Freeman provided his physical findings upon examination, concluded that relator's allowed physical conditions had reached MMI, assessed a ten percent whole person impairment, and opined that relator was capable of performing at a sedentary work level.
 {¶ 11} 6. Relator was examined by Michael A. Murphy, Ph.D., for her allowed psychological condition. In his June 2006 report, Dr. Murphy noted the following impairments: (1) daily activities — mild; (2) social interaction — mild; (3) adaptation to the workplace — moderate; and (4) attention, coordination and pace — mild. He noted further that relator's depression was mild by testing, and that she was able to meet her day-today responsibilities. He noted further that she had not been seen psychologically since early 2006. Ultimately, Dr. Murphy concluded that relator's allowed psychological condition had reached MMI, assessed a 16 percent impairment and concluded that relator's psychological condition was not work-prohibitive and that she had no work limitations.
 {¶ 12} 7. Relator filed a motion seeking to either depose or submit interrogatories to both Drs. Murphy and Freeman. These motions were heard before a staff hearing officer ("SHO") in September 2006. The SHO denied relator's request to depose or *Page 6 
submit interrogatories to Dr. Freeman finding no defect in Dr. Freeman's report. However, the SHO did grant relator's request to depose or submit interrogatories to Dr. Murphy as follows:
 Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that it is necessary for the fair adjudication of the claim file to grant the injured worker motion to depose Dr. Murphy. The deposition is necessary in order for the doctor to explain how he came to the conclusion that the injured worker is moderately impaired with regard to his [sic] ability to adapt to the work place. Further a deposition is necessary in order for the doctor to explain how the injured worker is moderately impaired in his [sic] ability to adapt to the work place, but has no work limitations. * * *
 Relator never did depose or Dr. Murphy.
 {¶ 13} 8. With regard to relator's allowed psychological condition, the record also contains the August 22, 2005 report of Roberto Madrigal, Ph.D., conducted to determine the extent of her disability. Dr. Madrigal administered the Minnesota Multiphasic Personality Inventory-2 test and indicated that the results showed very mild psychopathology. Dr. Madrigal opined that relator's allowed psychological condition had reached MMI, and that, based solely upon her allowed psychological condition, she could return to her previous position of employment or any other type of employment with no restrictions. Lastly, Dr. Madrigal indicated that relator should receive four more sessions of psychotherapy within the next two months for the purpose of closure.
 {¶ 14} 9. Relator's application for PTD compensation was heard before an SHO on November 27, 2006 and was denied. The SHO relied upon the report of Dr. Freeman and concluded that relator was capable of performing at a sedentary work level. The SHO also relied upon the reports of Drs. Murphy and Madrigal and concluded that, from a *Page 7 
psychological standpoint, relator could return to any type of employment with no restrictions. Thereafter, the SHO considered the nonmedical disability factors and found that relator's age was a negative factor considering her ability to return to and compete in the workforce, that her high school education was a positive factor with regard to her ability to return to the workforce, and that relator's varied work history was a positive factor demonstrating her ability to learn new work skills that may be required to return to entry-level sedentary work. The SHO also addressed some testimony by relator and noted as follows:
 The Injured Worker had returned to employment following her injury in 2002 on a part-time basis, working four hours per day. At hearing, the Injured Worker testified that she was no longer able to perform this part-time work when she stopped working in September of 2003. However, the evidence in the claim file indicates that the employer's plant closed in September of 2003. The Injured Worker testified at hearing that she worked on the last day that the plant was open. The treatment notes in file from Dr. R. Minhas, the Injured Worker's physician, indicated that he had released the Injured Worker to return to part-time work with restrictions in August of 2003. On 09/26/2003, Dr. Minhas's treatment note reports that the Injured Worker was laid off due to a plant closure. There is no medical evidence to support the Injured Workers' testimony that she was unable to continue working on a part-time basis in September of 2003.
 {¶ 15} Lastly, the SHO noted that relator did not participate in vocational rehabilitation after she left work in September 2003 and that she was not interested in pursuing rehabilitation services. The SHO found relator's failure to participate in any reeducation or retraining negatively.
 {¶ 16} 10. Thereafter, relator filed the instant mandamus action in this court. *Page 8 
Conclusions of Law: {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 18} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. *Page 9 
 {¶ 19} In this mandamus action, relator argues the commission abused its discretion in the following ways: by relying upon the report of Dr. Murphy which the commission had previously found to be internally inconsistent; by relying upon the report of Dr. Madrigal which pre-dated relator's application for PTD compensation; by relying upon the report of Dr. Freeman which relator contends was incomplete and ambiguous; and in considering her failure to pursue vocational rehabilitation against her. For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 20} Relator first contends that the commission abused its discretion by relying upon the report of Dr. Murphy. Relator points out that the commission granted her motion to depose or submit interrogatories to Dr. Murphy after finding that it was necessary for him to explain how he concluded that she was moderately impaired with regard to her ability to adapt to the work place, yet had no work limitations. Relator appears to argue that the granting of her motion to depose Dr. Murphy is synonymous with a finding that Dr. Murphy's report is so internally inconsistent and equivocal that it cannot be relied upon at all by the commission in spite of the fact that relator never availed herself of the opportunity to either depose Dr. Murphy or submit interrogatories to him to clear up any questions regarding his report.
 {¶ 21} It is undisputed that equivocal medical opinions do not constitute evidence upon which the commission can rely. Equivocal medical opinions are not evidence as they are of no probative value. Ambiguous statements, however, are considered equivocal only while they are unclarified. Ambiguous statements merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently *Page 10 
unreliable. See State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, and State ex rel. Paragon v. Indus. Comm. (1983),5 Ohio St.3d 72.
 {¶ 22} In his report, Dr. Murphy did indicate that, in his opinion, relator suffered a moderate impairment with regard to her ability to adapt to the workplace. However, he also indicated that relator would be able to perform under normal work stress and work under specific instructions. He also noted that relator's depression was mild by testing and that she has not been seen psychologically since early 2006. He assessed a 16 percent whole person impairment and concluded that relator could work without any limitations.
 {¶ 23} The magistrate concludes that the report of Dr. Murphy is not so equivocal or ambiguous that it could not be relied upon at all by the commission. Instead, the magistrate believes that Dr. Murphy's statement that she was moderately impaired with regard to her ability to adapt to the work environment, yet could perform under normal work stress and had no work limitations, goes to the weight and credibility to be given that report. Here, the commission compared the report of Dr. Murphy to the report of Dr. Madrigal who had examined her six months before she filed her application for PTD compensation. Dr. Madrigal had also found relator capable of returning to work. It is undisputed that the commission determines the credibility and weight to be given evidence. See Teece. As such, the magistrate finds that the commission did not abuse its discretion by relying upon the report of Dr. Murphy.
 {¶ 24} Relator also contends that the commission abused its discretion by relying upon the report of Dr. Madrigal since it pre-dated her application for PTD compensation. Dr. Madrigal examined relator on August 22, 2005, and relator filed her application for *Page 11 
PTD compensation six-months later on, March 1, 2006. Dr. Madrigal examined relator to determine the extent of her psychological disability. After administering certain tests, Dr. Madrigal found that relator had very mild psychopathology, that she had reached MMI, that she could return to either her former position of employment or any other employment with no restrictions, and that she should receive four more sessions of psychotherapy within the next two months for the purpose of closure.
 {¶ 25} Relator appears to be arguing that the report of Dr. Madrigal is stale and, as such, the commission abused its discretion by relying upon it. This magistrate disagrees.
 {¶ 26} In State ex rel. Hiles v. Netcare Corp. (1996),76 Ohio St.3d 404, the Supreme Court of Ohio stated that a finding of evidentiary staleness should always be approached cautiously. The court noted that the more relevant question concerned the content of the report and the question at issue when the report was written. In that case, the court upheld this court's determination that reports which pre-dated the claimant's permanent partial disability application by 16 and 31 months respectively were stale and could not constitute some evidence to support the commission's determination.
 {¶ 27} In the present case, Dr. Madrigal's report was written six months prior to the filing of relator's application for PTD compensation. Dr. Madrigal was asked to address the question of the extent of relator's psychological disability. In addressing the extent of her disability, Dr. Madrigal concluded that she had reached MMI and could return to work without limitations. Further, the record indicates that relator was not seen for her psychological condition between January and June 2006. Dr. Madrigal saw relator in August 2005, found that she was at MMI, should have four more sessions to achieve closure, and that she could return to work with no limitations. Based upon a comparison *Page 12 
of Drs. Madrigal and Murphy's reports, coupled with the fact that relator had not been seen for her psychological condition for at least six months, would tend to indicate that her psychological condition had indeed stabilized. Although the actual question before Dr. Madrigal did not concern permanent total disability, it did involve the extent of disability and Dr. Madrigal concluded that relator was capable of returning to work without any limitations. As such, the magistrate finds that the issue addressed by Dr. Madrigal was relevant to relator's later application for PTD compensation and finds that report was not stale.
 {¶ 28} Furthermore, a review of the report of Dr. Farrell, which relator submitted in support of her application, indicates that report was written a month prior to the filing of her application (five months after Dr. Madrigal's report) and that it is debatable whether that report could constitute some evidence upon which the commission could have relied in awarding her PTD compensation because, in addressing her ability to return to work, Dr. Farrell considered factors such as her education, work history, and job skills. Dr. Farrell's opinion that she was not capable of performing sustained remunerative employment addressed factors which are within the province of the commission to determine and are not suitable for a doctor to address.
 {¶ 29} Relator also contends that the report of Dr. Freeman was incomplete and could not constitute some evidence upon which the commission could rely. Relator argues that it is inappropriate for a doctor to do nothing more than check a box indicating that the claimant can perform sedentary work. Relator points out that she had self-reported to Dr. Freeman that she is able to sit for 20 minutes, walk from the living room to the kitchen, but no further, and can lift no more than five pounds. Relator contends that *Page 13 
Dr. Freeman was required to explain his conclusion that relator could perform sedentary work when she had these limitations.
 {¶ 30} In his report, Dr. Freeman provided his physical findings upon examination, concluded that she had a ten percent whole person impairment, and concluded that she could perform sedentary work. Contrary to relator's arguments, Dr. Freeman was not required to accept her self-reporting statements that she could only sit for 20 minutes, walk from the living room to the kitchen, and carry no more than five pounds. In his report, Dr. Freeman noted that relator sat for 30 minutes without any apparent discomfort. Further, Dr. Freeman was not required to specifically indicate how long relator could sit, stand, walk, or how much she could lift and carry. Instead, he noted that she could perform sedentary work which is defined in Ohio Adm. Code 4121-3-34(B)(2) as follows:
 (a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 31} As such, the magistrate finds that the commission did not abuse its discretion in relying upon the report of Dr. Freeman.
 {¶ 32} Lastly, relator contends that the commission abused its discretion by holding her failure to seek vocational rehabilitation against her. Relator argues that she is 67 years old, takes numerous narcotic medications, does not drive, requires full-time use of oxygen, and suffers from a depressive disorder. As such, she contends that she would *Page 14 
never be a candidate for any vocational rehabilitation and that her failure to participate in any re-education or retraining reflects negatively on her application.
 {¶ 33} It is undisputed that, outside of her allowed physical and psychological conditions, relator is significantly impaired as she suffers from chronic obstructive pulmonary disease (COPD). The commission has to base its determination solely on the allowed conditions, both physical and psychological. While it certainly is questionable whether relator would be capable of attempting any rehabilitation, any failure on the part of the commission in this regard is not fatal to the ultimate determination that relator was not entitled to PTD compensation because the commission determined that she could perform at a sedentary work level. As indicated, relator was working up until September 2003 when the plant closed. The commission could have concluded that relator could have attempted some rehabilitation at that point in time. In this case, the commission did not deny relator's application based solely upon her failure to participate in rehabilitation services; instead, the commission simply noted that reflected negatively on her application. The commission did not abuse its discretion in this regard.
 {¶ 34} Based on the foregoing, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus. *Page 1